No. 24-1651

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

Kevin Brooks,

      Plaintiff-Appellant,

   v.

Josh Richardson, et al.,

      Defendants-Appellees.

---

## Appeal from the United States District Court
## for the Northern District of Illinois
## Case No. 22-CV-6738
## District Judge Franklin U. Valderrama

---

## BRIEF OF PLAINTIFF-APPELLANT KEVIN BROOKS

---

PEOPLE'S LAW OFFICE
Janine L. Hoft
Nora Snyder
Jan Susler

1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070
(773) 235-6699 (fax)

*Attorneys for Plaintiff-Appellant*

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT


Appellate Court No.: <u>24-1651</u>
Short Caption: <u>Brooks v. Richardson, et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)     The full name of every party that the attorney represents in the case:

     <u>Plaintiff Kevin Brooks</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

     <u>People's Law Office</u>

(3)     If the party or amicus is a corporation:
     i)      Identify all its parent corporations, if any; <u>N/A</u> and
     ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock: <u>N/A</u>

_____
Attorney's Signature: <u>/s/ Janine L. Hoft</u>         Date: June 6, 2024
Attorney's Printed Name: Janine L. Hoft
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes <u>X</u>  No __
Address: <u>1180 N. Milwaukee Ave., Chicago, Illinois 60642</u>
Phone Number: <u>(773) 235-0070</u>         Fax Number: <u>(773) 235-6699</u>
E-Mail Address: janinehoft@peopleslawoffice.com

i

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.: <u>24-1651</u>
Short Caption: <u>Brooks v. Richardson, et al.</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(4)     The full name of every party that the attorney represents in the case:

<u>Plaintiff Kevin Brooks</u>

(5)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>People's Law Office</u>

(6)     If the party or amicus is a corporation:
ii)     Identify all its parent corporations, if any; <u>N/A</u> and
ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock: <u>N/A</u>

---

Attorney's Signature: <u>/s/ Jan Susler</u>          Date: June 13, 2024
Attorney's Printed Name:  Jan Susler
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes <u>X</u>  No <u> </u>
Address: <u>1180 N. Milwaukee Ave., Chicago, Illinois 60642</u>
Phone Number: <u>(773) 235-0070</u>          Fax Number: <u>(773) 235-6699</u>
E-Mail Address:

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No.: 24-1651
Short Caption: Brooks v. Richardson, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(7) The full name of every party that the attorney represents in the case:

Plaintiff Kevin Brooks

(8) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

People's Law Office

(9) If the party or amicus is a corporation:
iii) Identify all its parent corporations, if any; N/A and
ii) List any publicly held company that owns 10% or more of the party's or amicus' stock: N/A

---

Attorney's Signature: /s/ Nora P. Snyder          Date: June 13, 2024
Attorney's Printed Name: Nora P. Snyder
Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d). Yes X  No _
Address: 1180 N. Milwaukee Ave., Chicago, Illinois 60642
Phone Number: (773) 235-0070          Fax Number: (773) 235-6699
E-Mail Address:

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Circuit Rule 34(f), Plaintiff Brooks respectfully requests oral argument.

# TABLE OF CONTENTS

STATEMENT CONCERNING ORAL ARGUMENT ........................................................... iv

TABLE OF AUTHORITIES ...................................................................................... vi

JURISDICTIONAL STATEMENT ................................................................................ 1

ISSUES PRESENTED FOR REVIEW ........................................................................... 2

STATEMENT OF THE CASE ..................................................................................... 3

    A. Procedural History ......................................................................................... 3

    B. Statement of the Facts ..................................................................................... 3

        1. Brooks developed a serious medical condition while in custody ................. 4

        2. Defendants were deliberately indifferent to Brooks' medical needs ............ 4

        3. Brooks is finally taken to the hospital, suffering unnecessary injury ........... 7

SUMMARY OF THE ARGUMENT .............................................................................. 9

STANDARD OF REVIEW ....................................................................................... 10

ARGUMENT ........................................................................................................ 10

    I.       The District Court Erred in Granting Defendants' Motion to Dismiss the Denial of Medical Care Claims in Count I of Plaintiff's Complaint ........................ 10

        A.    The Supreme Court and the Seventh Circuit Recognize Bivens Claims in Identified Contexts, Including Denial of Medical Care ......................................... 10

        B.    Plaintiff's Claims Are Not Meaningfully Different from *Carlson v. Green* and Do Not Present a New Context ..................................................................... 13

        C.    Special Factors Do Not Counsel Against Applying *Bivens* ......................... 19

    II.      The District Court Erred in Granting Defendants' Motion to Dismiss the Eighth Amendment Claims in Count II of Plaintiff's Complaint with Respect to Defendants Harbison and Schreiber ........................................................................ 21

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Arnett v. Webster*, 658 F.3d 742 (7th Cir 2011) ........................................................................ 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 10

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ................................................................................................................................. *passim*

*Carlson v. Green*, 446 U.S. 14 (1980) .............................................................................. *passim*

*Council v. Sacchetti*, No. 2:21-cv-00302-JPH-MKK, 2023 WL 2526263 (S.D. Ind. Mar. 14, 2023) ........................................................................................................................................ 13

*Davis v. Passman*, 442 U.S. 228 (1979) .................................................................................. 11

*Due v. Ahmed*, No. 22-cv-00640-JPG, 2022 WL 2703913 (S.D. Ill. July 12, 2022) ................. 13

*Egbert v. Boule*, 596 U.S. 482 (2022) ................................................................... 10, 12, 19

*Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978) ................................................................ 16, 21

*Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F. 4th 555 (7th Cir. 2022) ................. 19

*Hammack v. Schneider*, No. 19-cv-00230-JPG, 2023 WL 143312 (S.D. Ill. Jan. 10, 2023) ..... 13

*Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016) ............................................................ 23

*Hernandez v. Mesa*, 589 U.S. 93 (2020) ................................................................................. 10

*Kourani v. Sproul*, No. 21-cv-01721-JPG, 2022 WL 1185126 (S.D. Ill. Apr. 21, 2022) .......... 13

*Landis v. Shellhammer*, 20 CV 50447, 2023 WL 6276521 (N.D. Ill. Sept. 26, 2023) ......... 12, 16

*Mesa Labs., Inc. v. Fed. Ins. Co.*, 994 F.3d 865 (7th Cir. 2021) ................................................ 10

*Poulin v. Waite*, 22-3050, 2024 WL 617730 (7th Cir. Feb. 14, 2024) ...................................... 19

*Rodriguez v. Ahmed*, No. 20-cv-01236-JPG, 2023 WL 361207 (S.D. Ill. Jan. 23, 2023) ......... 19

*Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023) .............................................................. 18, 19

*Snowden v. Henning*, 72 F.4th 237 (7th Cir. 2023) ....................................................... *passim*

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.,* 755 F.3d 832 (7th Cir. 2014) ................................................................................. 10

*Thomas v. Ahmed*, No. 21-cv-00192-JPG, 2023 WL 2499597 (S.D. Ill. Mar. 14, 2023).... 13, 16

*United States v. Bridgewater*, 995 F.3d 591 (7th Cir. 2021) ...................................... 12

*United States v. Funches*, 327 F.3d 582 (7th Cir. 2003) .......................................... 13

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) .............................................................. *passim*

**Statutes**

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1331 ....................................................................................... 1

28 U.S.C. § 1367 ....................................................................................... 1

# JURISDICTIONAL STATEMENT

The district court had jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to redress the deprivation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment due to the failure to provide adequate medical care while he was in federal custody.

The date of the judgment to be reviewed is March 31, 2024 (Dkt. 27), which is a final judgment which adjudicates all of the claims with respect to all parties. On April 19, 2024, Plaintiff timely filed a Notice of Appeal (Dkt. 28) of the district court's order of March 31, 2024. (Dkt. 26). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether, pursuant to *Bivens,* Plaintiff stated a claim for the Defendants' denial of medical care in violation of the Eighth Amendment to the U.S. Constitution while he was in federal custody.

2.      Whether Defendants Harbison and Shreiber are liable to Plaintiff pursuant to *Bivens* for their individual conduct in failing to ensure that Plaintiff was transferred outside the facility for necessary medical care.

## STATEMENT OF THE CASE

### A.     Procedural History

This action arises from Defendants' failure to provide adequate medical care to Plaintiff Kevin Brooks ("Plaintiff") when he was a prisoner at a minimum-security satellite work camp operated by the Bureau of Prisons. (Dkt. 1). As a result of the denial and delay of more than two weeks, Plaintiff suffered excruciating pain and distress, infection, unnecessary and extensive surgeries, as well as permanent injuries and damage. (*Id.*, ¶¶ 7–54). Brooks brought this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against Defendants Josh Richardson, Bryant McGee, Leslee Brooks, Elizabeth Harbison, and Melissa Schreiber ("Defendants"). (*Id.*, ¶ 55–60). The Complaint alleges, *inter alia*, that the Defendants acted with deliberate indifference in failing to provide Brooks with adequate medical care for his serious medical condition. (*Id.*).

Defendants moved to dismiss Plaintiff's Complaint in its entirety. (Dkt. 16). The district court granted Defendants' motion to dismiss, entered final judgment on Plaintiff's claims, and terminated the case. (App. 1, Dkt. 26). This appeal followed.

### B.     Statement of the Facts

In December of 2020, Kevin Brooks was a federal prisoner residing in a minimum-security satellite work camp, and was completely dependent on the Bureau of Prisons for medical care. (Dkt. 1, ¶ 7). Brooks was not in law enforcement custody when this lawsuit was filed. (Dkt. 1, ¶ 3).

### 1. Brooks developed a serious medical condition while in custody

On or about December 26, 2020, Plaintiff Brooks began experiencing sharp abdominal pain. (Dkt. 1, ¶ 8). He exhibited obvious signs of distress and reported his pain at the earliest sick call opportunity. (*Id.* ¶ 9). Brooks continued to experience severe pain, worsening to the point he could not sleep, and increasing in intensity over the course of approximately ten days. (*Id.* ¶¶ 10, 13, 15). Brooks continued to seek medical treatment and, when walking away from a sick call where he was given a laxative, he vomited a gray and green substance. (*Id.* ¶¶ 11, 14). Brooks continued to suffer increased pain in his abdominal area, worsening to the point that he was no longer able to walk without assistance, and he was unable to perform his normal activities or work assignment and was confined to his bed. (*Id.* ¶¶ 20–21, 24). His debilitating pain continued, he had difficulty moving, his distress and suffering were obvious, and he continued his repeated pleas for medical care. (*Id.* ¶¶ 26–27). Almost two weeks after Brooks first began telling medical staff he was in severe abdominal pain, he had an elevated temperature and reported his pain level at 10 out of 10. (*Id.* ¶¶ 28–29). The next morning, a nurse who is not a defendant recognized that Brooks' life depended on his immediate transfer to a hospital, where he was finally taken. (*Id.* ¶ 41–42).

### 2. Defendants were deliberately indifferent to Brooks' medical needs

Defendants Nurse Practitioner Richardson, Nurse McGee, Physician's Assistant Brooks (PA Brooks), and Health Services Administrator Dr. Harbison were all employed as medical providers responsible for providing medical care to the prisoners.

(Dkt. 1, ¶ 4). Defendant Schreiber was camp administrator and responsible for the care and custody of all prisoners at the facility. (*Id.* ¶ 5).

On December 28, 2020, Brooks sought treatment for his ongoing pain, but Defendant McGee ignored Brooks' complaints, refused to physically examine Brooks, and failed to provide him with anything to alleviate his pain. (*Id.* ¶ 11). McGee failed to send Brooks to the hospital and failed even to communicate or consult with a supervisor or physician. (*Id.* ¶ 12).

On January 5, 2021, after Brooks had been in abdominal pain for ten days, he was seen by Defendant Richardson, who ignored Brooks' complaints, failed to perform any appropriate examination, including palpating Brooks' abdomen, failed to seek any diagnostic lab tests that would have determined the cause and urgency of the abdominal pain, failed to consult a physician or other medical provider, and failed to arrange the transfer of Brooks to a hospital for appropriate assessment and treatment. (*Id.* ¶¶ 14, 16–17). Defendant Richardson observed Brooks vomiting a gray and green substance, made no record of this, and instructed Brooks to go back to his living area. (*Id.* ¶ 19).

Subsequently, between six and eight fellow prisoners carried Brooks to sick call, at which time both Defendants McGee and Richardson again refused to provide Brooks any appropriate treatment and failed to provide him with any relief from his pain, ignoring his complaints and sending him back to his living area. (*Id.* ¶¶ 20–21, 14, 16–17). Despite observing Brooks was unable to walk, Defendants McGee and Richardson

failed to physically examine Brooks, perform any tests or order any laboratory tests, and failed to consult a supervisor physician or any other medical provider. (*Id.* ¶¶ 22–23). Neither McGee nor Richardson arranged for or made any attempt to see that Brooks was sent to a hospital, where competent medical personnel would have properly assessed and treated his underlying condition. (*Id.* ¶ 23).

Defendant Schreiber personally observed Brooks lying in bed exhibiting obvious symptoms of extreme pain, and despite assurances to Brooks that he would receive medical attention, failed to follow up or ensure appropriate medical attention was given to Brooks. (*Id.* ¶¶ 25–26).

On January 9, two weeks after Brooks first complained of severe abdominal pain, Defendant McGee examined Brooks, recording that he had an elevated temperature and that he reported a pain level of 10 on a scale with the highest pain being a 10, and yet Brooks was still not transferred to a hospital. (*Id.* ¶¶ 27–28, 36). Defendant PA Brooks was informed that Brooks had an elevated pulse and temperature and that he had been complaining of abdominal pain for over a week. (*Id.* ¶¶ 30). Defendant PA Brooks failed to personally examine or even speak to Brooks, failed to order any laboratory tests that would have revealed the cause and urgency of Brooks' condition, failed to communicate with any other medical provider about Brooks' condition, and failed to arrange for the transport of Brooks to a hospital where competent medical providers would have properly assessed and treated the condition underlying the severe, ongoing, and unrelenting symptoms experienced by Brooks. (*Id.* ¶¶ 30–33).

No Defendant ever affirmatively or appropriately followed up with Brooks about his condition. (*Id.* ¶ 13). No Defendant ever notified or consulted a physician about Brooks, and no physician ever examined or treated him. (*Id.* ¶ 40). Defendant Harbison, a physician, never inquired about, examined, or followed up on Brooks' condition, symptoms, or repeated complaints of ongoing, unrelenting, severe abdominal pain over the course of two weeks. (*Id.* ¶¶ 8–40). Defendants Harbison and Schreiber further failed to ensure that appropriate guidelines were put in place to ensure that Brooks was transferred to a facility where he would receive appropriate medical care. (*Id.* ¶ 60).

### 3. Brooks is finally taken to the hospital, suffering unnecessary injury

The nurse who examined Brooks at his bedside on January 10 promptly recognized the life-threatening nature of his condition, and immediately arranged for Brooks to be transferred to a hospital emergency room. (Dkt. 1, ¶¶ 41–42). Brooks was carried to a car by fellow prisoners, and correctional officers drove him to the hospital and dropped him off at the door. (*Id.* ¶¶ 43).

At the hospital, doctors observed that Brooks was obviously in distress. (*Id.* ¶ 44). The doctor's examination revealed severe abdominal distension and severe abdominal tenderness upon palpation. (*Id.*). Laboratory tests revealed several life-threatening conditions, including acute appendicitis with an infection within the abdominal cavity, a perforation, and severe sepsis. (*Id.* ¶ 45). Brooks was placed in intensive care and provided fentanyl for his pain. He underwent emergency surgery that day, which

confirmed his appendix had ruptured. (*Id.* ¶¶ 46–47). Brooks remained in the hospital

for two weeks, developing a painful bed sore. He underwent a second surgery to wash

out the extensive infection. (*Id.* ¶¶ 48–50). The delay in treatment of the ruptured

appendix resulted in an extended hospital stay. Brooks was not only left with a massive

permanent scar; he also developed diastasis recti—a separating of his abdominal

muscles—and he continued to suffer pain, fatigue, shortness of breath, and nausea. (*Id.*

¶¶ 51–53). Had Brooks been taken to the hospital earlier, he would have needed only a

simple appendectomy surgery, which would not have required a two-week hospital

stay, and which would have resulted in minimal scarring.

## SUMMARY OF THE ARGUMENT

Defendants violated Plaintiff Brooks' rights under the Eighth Amendment, and Brooks has a valid cause of action for damages under *Bivens* and its progeny. The Supreme Court, even while restricting the application of *Bivens* to new contexts, continues to recognize *Bivens* claims brought within the long-established context of the denial of adequate medical care to federal prisoners. Brooks does not bring his *Bivens* claim in a new context, and there is no special factor that would warrant prohibiting Brooks from pursuing his claims. The district court erred by finding that the holding of *Carlson v. Green*, 446 U.S. 14 (1980), identifying one of three contexts for *Bivens* claims repeatedly acknowledged by the Supreme Court, was limited to the specific facts of that case: an asthmatic federal prisoner who was denied medical care for eight hours resulting in a death. The length of time that care was denied and the outcome are not meaningful differences that create a new *Bivens* context; if they were, only those unlikely cases with fact patterns identical to *Carlson* could proceed, which is not what the Supreme Court's or this Court's precedents require. In addition, the district court erred in dismissing Count II, which sought to hold two Defendants in supervisory positions responsible for their specific, individual acts and failures to ensure that appropriate guidelines were in place that would ensure Plaintiff Brooks receive appropriate and necessary medical care.

**STANDARD OF REVIEW**

This Court reviews a district court's decision to grant a motion to dismiss *de novo*.

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*,

755 F.3d 832, 836 (7th Cir. 2014). In order to survive a 12(b)(6) motion to dismiss, a

complaint need only allege facts that "state a claim to relief that is plausible on its face."

*Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, in resolving a

motion to dismiss, all well-pleaded facts are taken as true, and this Court determines

whether those facts "plausibly give rise to an entitlement to relief." *Id.* (citing *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009)). The motion to dismiss should be granted only if, in

taking the facts in the light most favorable to the nonmoving party, it appears beyond

doubt that a plaintiff cannot prove any facts that would support their claim for relief.

*Mesa Labs., Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021) (citations omitted).

**ARGUMENT**

I. **The District Court Erred in Granting Defendants' Motion to Dismiss the Denial of Medical Care Claims in Count I of Plaintiff's Complaint**

A. **The Supreme Court and the Seventh Circuit Recognize Bivens Claims in Identified Contexts, Including Denial of Medical Care**

The Supreme Court in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and the subsequent

iterations of the rulings in *Hernandez v. Mesa*, 589 U.S. 93 (2020) and *Egbert v. Boule*, 596

U.S. 482 (2022) continue to acknowledge and reiterate the existence of a *Bivens* claim

under the Eighth Amendment for failure to provide adequate medical treatment to a

federal prisoner, upholding the long-standing precedent established in *Carlson v.*

10

*Green*, 446 U.S. 14 (1980). *See Abbasi*, 582 U.S. at 131 (noting that in *Carlson,* "The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a federal prisoner] a damages remedy for failure to provide adequate medical treatment"); *Hernandez*, 589 U.S. at 99 (noting that the Court extended *Bivens* to "a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment"); *Egbert*, 596 U.S. at 490–91 (noting that the Court in *Carlson* fashioned a new cause of action "for a federal prisoner's inadequate-care claim under the Eighth Amendment").

The Supreme Court has not overruled its decisions in *Bivens* or *Carlson*, and therefore federal prisoners have access to the previously established damages remedy for inadequate medical care. *See Snowden v. Henning*, 72 F.4th 237, 242 (7th Cir. 2023). In *Snowden v. Henning*, this Court emphasized that the Supreme Court has not overruled the "*Bivens* trilogy," meaning the three contexts in which the Supreme Court has recognized an implied damages remedy against federal officers for constitutional violations: warrantless searches, arrests, and unreasonable uses of force (*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)); workplace sex discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and, as Plaintiff Brooks alleges here, Eighth Amendment claims for failure to provide adequate medical care (*Carlson v. Green*, 446 U.S. 14 (1981)). 72 F.4th at 242. This Court in *Snowden* reversed the district court's decision to dismiss plaintiff's *Bivens* claim, holding that "we cannot decline to apply 'the settled law of *Bivens* unless [the plaintiff's] case is

meaningfully different" from one of the three established contexts. *Id.* at 242, 247. If the context is not new, then the claim may proceed, and there is no need to proceed to a second step of determining whether "special factors" counsel against authorizing a new *Bivens* remedy. *Id.* at 239, 242.

This Court has continued to acknowledge the availability of a *Bivens* claim in the context of a denial of medical care to a federal prisoner. In fact, in several post-*Abbasi* decisions, this Court has confirmed that federal prisoners can challenge inadequate medical care through a *Bivens* action for damages. *See United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021) (upholding constitutionality of waiver in plea agreement of right to seek compassionate release in part based on availability of damages remedy for inadequate medical care under *Bivens*); *Snowden*, 72 F.4th at 238–39 (noting that the Supreme Court has "left the door open" for *Bivens* claims in the three pre-existing contexts to proceed, including "claim[s] against federal prison officials under the Eighth Amendment for failure to provide adequate medical care").

Likewise, district courts in this Circuit have repeatedly rejected arguments that *Egbert* adversely impacted the availability of a *Bivens* remedy for Eighth Amendment medical claims and have allowed such claims to proceed. *See, e.g.*, *Landis v. Shellhammer*, 20 CV 50447, 2023 WL 6276521, at *5–6 (N.D. Ill. Sept. 26, 2023) (denying motion to dismiss *Bivens* claim for inadequate medical care for federal prisoner's injured wrist and inadequate pain management over four months, concluding plaintiff's case was "in the same continuum" as *Carlson* despite involving a different medical condition and having

a different outcome); *Thomas v. Ahmed*, No. 21-cv-00192-JPG, 2023 WL 2499597, at *5 (S.D. Ill. Mar. 14, 2023) (rejecting argument that *Egbert* foreclosed *Bivens* claim based on inadequate treatment of knee injury because claim "presents the same context as *Carlson*"); *Hammack v. Schneider*, No. 19-cv-00230-JPG, 2023 WL 143312, at *1 (S.D. Ill. Jan. 10, 2023) (denying motion to dismiss because plaintiff's claim for denial of medical care resulting in loss of use of hand was virtually the same context as *Carlson*); *Due v. Ahmed*, No. 22-cv-00640-JPG, 2022 WL 2703913, at *1–2 (S.D. Ill. July 12, 2022) (plaintiff could pursue his claim against individual federal officer who denied him medical care for his inguinal hernia, chronic digestive issues, and constipation); *Kourani v. Sproul*, No. 21-cv-01721-JPG, 2022 WL 1185126, at *4 (S.D. Ill. Apr. 21, 2022) (USP Marion prisoner could proceed with denial of medical care claims for ankle injury because case presented "a classic context akin to [*Carlson*]"); *Council v. Sacchetti*, No. 2:21-cv-00302-JPH-MKK, 2023 WL 2526263, at *3 (S.D. Ind. Mar. 14, 2023) (facts sufficient to conclude Terre Haute warden and mental health professional were deliberately indifferent to federal prisoner's serious mental health needs).

### B. Plaintiff's Claims Are Not Meaningfully Different from *Carlson v. Green* and Do Not Present a New Context

Plaintiff's claims here, brought pursuant to the Eighth Amendment for failure to provide adequate medical care, are not meaningfully different from the failure to give competent medical attention alleged in *Carlson*. This Court has explained that "meaningful differences" are those that "implicate[] the separation-of-powers calculus." *Snowden*, 72 F.4th at 247. In *Snowden*, this Court surveyed the Supreme Court's

precedents and concluded that some degree of factual variation will not preclude a *Bivens* remedy. *Snowden*, 72 F.4th at 243–44. Rather, for a difference to be "meaningful" it must alter the policy balance that led to the initial creation of the implied damages remedy:

> We understand the Court's evolving *Bivens* guidance to suggest that a difference is 'meaningful' if it might alter the policy balance that initially justified the causes of action recognized in *Bivens*, *Davis*, and *Carlson.* If a case involves facts or legal issues that would require reweighing the costs and benefits of a damages remedy against federal officials, then the difference is 'meaningful' because we risk further encroachment on the legislative function rather than simply applying controlling Supreme Court precedent.

*Id.* at 244. This Court ruled that the settled law of *Bivens* must be applied unless a plaintiff's case is different in a way that "might alter the cost–benefit balance that justified an implied damages remedy in those cases." *Id.* at 244, 247.

Here, the district court set forth three differences between *Carlson* and Brooks' claim—differences that can only be characterized "so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 244 (quoting *Abbasi*, 582 U.S. at 149).

First, the district court noted that Brooks' Complaint alleges a failure to treat his abdominal pain over fourteen days, rather than, as in *Carlson*, a failure to provide care during an asthmatic episode lasting eight hours and resulting in death. (Dkt. 26, at 10). There is no meaningful legal distinction between the denial of medical care in the wake of an asthmatic attack versus a case of appendicitis. The district court failed to explain why any of these distinctions is meaningful: the specific medical problem, the length of time the condition went untreated, or the ultimate result of death versus serious injury.

14

It is nonsensical to foreclose a deliberate indifference claim based merely on the duration of the denial of medical care or to require that a claim is cognizable only if the defendant's conduct leads to death. These distinctions do not implicate separation-of-powers concerns and are precisely the type that this Court has rejected as too "trivial" to constitute a new *Bivens* context. *See Snowden*, 72 F.4th at 244. Indeed, affirming the district court's reasoning would essentially mean *Carlson* would be limited to cases with identical facts, an approach this Court has already rejected and which has no basis in law. *See id.* at 247 (finding "narrow factual differences" such as the location of the arrest, the presence of an arrest warrant, and the number of officers involved in the incident were insufficient to create a new *Bivens* context).

Second, the district court found a distinction in Brooks' allegations against two supervisors in addition to the identified medical providers who ignored Brooks' complaints of pain and pleas for care. (Dkt. 26, at 12–13). However, Brooks' allegations against both individuals are not limited to a theory of supervisory liability. One of these "supervisors" (Defendant Camp Administrator Shreiber) had specific personal involvement with Brooks when she acknowledged his condition and need for care but failed to ensure that he received adequate care. The other, Health Services Administrator Defendant Harbison, was a physician at the facility, and discovery may even reveal her knowledge of Brooks' condition through review of his records or her failure to involve herself in Brooks' care while on duty at the facility. In addition, Brooks also sued nonsupervisory defendants. Even assuming *arguendo* that the claims

against Schreiber and Harbison are not viable, the district court did not explain why that would also defeat the claims against the individual medical providers, who are squarely in the class of defendants to which *Carlson* is routinely applied. *See, e.g. Landis*, 2023 WL 6276521 at *5–6 (denying motion to dismiss *Bivens* claim against nurses and nurse practitioner); *Thomas*, 2023 WL 2499597, at *5 (concluding *Bivens* claim against "prison medical officials" including physician's assistant presented "the same context" as *Carlson*).

Moreover, a close reading of the court decisions in *Carlson* debunks the notion that inclusion of supervisory personnel is a distinguishing factor. The Supreme Court decision generally references "federal prison officials" as the defendants. *Carlson*, 446 U.S. at 16. The named defendant Norman A. Carlson was in fact the director of the Federal Bureau of Prisons at the time Ms. Green's son died. *Green v. Carlson*, 581 F.2d 669, 676 (7th Cir. 1978). It is hard to imagine a position more "supervisory" than that. Moreover, the district court decision in *Carlson* reveals that there were a number of other defendants in that case, many of whom could only be described as supervisory. Several officials and employees of both the Federal Bureau of Prisons as well as the Joint Commission of Accreditation of Hospitals were named as defendants, as well as the warden at the facility. *Id.* at 671.[1] Notably, similar to Brooks' allegations here, the

---

[1] The warden was dismissed due to lack of personal service, not due to his capacity as a supervisor. *Green,* 581 F.2d at 676, n. 12.

plaintiff in Green "alleged that defendant Dr. Benjamin De Garcia, the chief medical officer directly responsible for the prison medical services, did not provide any emergency procedure for those times when a physician was not present." *Id.*

Third, the district court here found the presence of "alternative remedial structures"—namely the Federal Tort Claims Act (FTCA) and the BOP's administrative remedy program and—created a new context that previous *Bivens* cases did not consider. (Dkt. 26, at 9, 11). Neither alternative remedy is an adequate basis for finding a meaningful difference between Brooks' case and *Carlson*. The Supreme Court in *Carlson* specifically rejected the notion that the FTCA provided an adequate alternative to remedy the denial of adequate medical care. 446 U.S. at 19–20. The Court concluded that congressional comments accompanying the 1974 amendments to the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.* Specific failings of the FTCA, as recognized by the Supreme Court, include that it is an ineffective deterrent, and that punitive damages and a jury trial are prohibited, as well as that an FTCA cause of action may not exist in all states. *Id.* at 20–23. The Supreme Court concluded that "[p]lainly FTCA is not a sufficient protector of the citizens' constitutional rights." *Id.* at 23. Because the Supreme Court was fully aware of the FTCA at the time it decided *Carlson*, and explicitly rejected it as a reason to refrain from establishing a damages remedy under *Bivens* for denial of medical care, the FTCA cannot now, 40 years later, somehow create a "new context." *See Snowden*, 72 F.4th at 246 n. 4 (rejecting defendant's argument that the FTCA created a new context, noting

17

that "the statute does not displace a *Bivens* claim in the narrow cases where it is available"); *Sargeant v. Barfield*, 87 F.4th 358, 368 n. 5 (7th Cir. 2023) (noting that the FTCA "cannot have altered the policy balance that initially justified the cause of action recognized in *Carlson*" because "*Carlson* acknowledged the FTCA and concluded that a *Bivens* remedy was still necessary") (cleaned up).

The district court's conclusion that the BOP's administrative remedy program creates a new context fares no better. As an initial matter, Brooks was no longer in custody when he filed this lawsuit, so the BOP's administrative remedy program could not have provided him any redress for his injuries. Moreover, as Defendants recognize, the BOP grievance procedure provides no damages remedy. (Dkt. 17 at 5). When establishing a damages action for inadequate medical care, the Supreme Court in *Carlson* emphasized the deterrent value of damages awards against individuals, as well as the availability of punitive damages, as reasons why the FTCA was not an adequate alternative to a *Bivens* action. 446 U.S. at 20–22. Therefore, the BOP remedy program—which does not provide a damages remedy at all—does not affect the policy balance that informed the Supreme Court's decision to establish a damages remedy in *Carlson*.

The district court failed to explain how any of the alleged differences between Brooks' claims here and the claims brought in *Carlson* alter the policy balance that justified the cause of action created in *Carlson* or implicate separation of powers concerns. Nor could it, because there is no alteration of policy balance or implication of

separation of powers. The district court erred in concluding that Brooks' claims are brought within a new *Bivens* context.

**C.** **Special Factors Do Not Counsel Against Applying** *Bivens*

This Court has continued applying the two-part test from *Abbasi* in post-*Egbert* decisions. *See Poulin v. Waite*, 22-3050, 2024 WL 617730, at *2 (7th Cir. Feb. 14, 2024); *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F. 4th 555, 561–62 (7th Cir. 2022); *see also*, *Rodriguez v. Ahmed*, No. 20-cv-01236-JPG, 2023 WL 361207, at *3–4 (S.D. Ill. Jan. 23, 2023) (noting that the Supreme Court in *Egbert* "made clear that it retained the same two-step analysis used in *Abbasi*," and "since *Egbert,* the Seventh Circuit has reiterated that the two-part test used post-*Abbasi* to evaluate claims under *Bivens* remains the same.").

This Court has recognized that the two-step inquiry may sometimes meld and special factors may be relevant to both steps. *See Sargeant*, 87 F.4th at 366 (citing *Egbert,* 596 U.S. at 492, 496). However, in this case, the context of failure to provide adequate medical care is squarely within the *Bivens* trilogy, and there are no special factors unique to these facts that were not considered in *Carlson*. In *Sargeant*, this Court held that a failure to protect case brought pursuant to *Carlson* was in a new *Bivens* context, because, although it involved a claim of deliberate indifference under the Eighth Amendment, a failure to protect claim was meaningfully different than the denial of medical care claim recognized in *Carlson*. 87 F.4th at 365–67. Unlike in *Sargeant*, Plaintiff

Brooks' case involves precisely the same type of claim as *Carlson*—denial of adequate medical care.

The district court below did not simply meld the two steps, but erred in finding that "the presence of special factors … create a new *Bivens* context." (Dkt. 26, at 11). These so-called special factors were unpersuasive to the Court in *Carlson* and were specifically rejected. The district court here did not find any special factor that would distinguish this case from the inadequate medical care claims brought in *Carlson,* and did not find any special factor that would justify a conclusion that here there is a new *Bivens* context. As argued above, the Supreme Court in *Carlson* specifically rejected the FTCA as a reasonable alternative remedy for a federal prisoner who is denied medical care. *Carlson,* 446 U.S. at 19–20. The question was squarely presented: "Is a remedy available directly under the Constitution, given that respondent's allegations could also support a suit against the United States under the Federal Tort Claims Act?" *Carlson,* 446 U.S. at 16–17. The Bureau of Prisons' grievance procedure is similarly inappropriate, as it can provide no benefit to Plaintiff Brooks, who is now out of prison, and as he is seeking damages for his pain and suffering and permanent injuries.

The requisite justification for claiming a new *Bivens* context, particularly within a case raising one of the three constitutional claims recognized by the *Bivens* trilogy, is whether a special factor exists that previous *Bivens* cases have not considered. The Supreme Court in *Carlson* reviewed and rejected the notion that any special factor or

availability of an alternative remedy would thwart a federal prisoner who was denied

adequate medical care from bringing a claim under *Bivens.*

## II. The District Court Erred in Granting Defendants' Motion to Dismiss the Eighth Amendment Claims in Count II of Plaintiff's Complaint with Respect to Defendants Harbison and Schreiber

Plaintiff brought a separate stand-alone *Bivens* claim against Defendants

Harbison and Shreiber for their failure to set forth guidelines identifying when a

prisoner should be transferred out of the facility for medical care. Defendant Schreiber

had personal knowledge of Brooks' condition, and Defendant Harbison was the

physician responsible for the care and treatment of the prisoners at the facility. Plaintiff

has not yet had the chance to discover when, during this fourteen-day period,

Dr. Harbison was present at the facility, what information she received and when about

prisoners' medical complaints, and what procedures were in place to consult or inform

her of prisoners' medical complaints.

The allegations of unconstitutional conduct against Defendants Harbison and

Schreiber do not arise in a new context, but are also squarely within the denial of

medical care claims in *Carlson*, as argued above. As discussed, Defendants had

analogous roles to defendants sued in *Carlson*. *See Green*, 581 F.2d at 671, 676 n.12

(defendants included chief medical officer and warden, who was dismissed for lack of

service). Defendants Harbison and Schreiber had personal responsibility for the

provision of medical care to the prisoners at the federal camp facility. Discovery may

show that the seven enumerated failures in Count II caused the delay in caring for Brooks as he complained of abdominal pain.

The district court erred in holding that Plaintiff was attempting to challenge federal policy. (Dkt. 26 at 14). The court's reliance on *Ziglar v. Abbasi*, 582 U.S. 120, is inapposite. The claim in *Abbasi* challenged confinement conditions pursuant to a high-level executive policy created in the wake of September 11th. *Id.* at 140. The Court concluded that the claims would call into question the formulation and implementation of general policy. *Id.* at 141. The claims were brought against high-level federal officials including the U.S. Attorney General, Director of the Federal Bureau of Investigation, and the Commissioner of the Immigration and Naturalization Service.

Plaintiff here is not attempting to alter the policies of the Bureau of Prisons, but instead seeks accountability and redress for the unconstitutional acts of these two individual federal officers. Harbison and Schreiber are also responsible for the delay in getting Plaintiff to the hospital, a delay during which his ruptured appendix festered and became infected. The acts and omissions committed by these two federal officials contributed to Plaintiff's injury and damage.

Supervisory defendants, like Harbison and Schreiber, may be liable for violations of constitutional rights. A supervisor who turns a blind eye to the failures and deficiencies of the protocols, policies, practices and procedures in place to ensure the adequate provision of medical care to the prisoners in their care may be deliberately indifferent and liable pursuant to the Eighth Amendment. *See, e.g. Haywood v. Hathaway,*

842 F.3d 1026, 1031 (7th Cir. 2016) (warden may be liable for conditions of confinement in violation of the Eighth Amendment). The district court cited *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir 2011) as support for dismissing Brooks' claims against Harbison and Schreiber, noting there is no *Bivens* claim for a simply supervisory role. (Dkt. 26 at 13). But this Court in *Arnett* recognized that a supervisor can indeed be personally responsible where, as Brooks alleges here, the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent. 658 F.3d at 757. Plaintiff Brooks alleged that Defendant Schreiber personally observed him while he was visibly ill, promised to ensure that he received medical attention, and then failed to do so, which is sufficient to raise a reasonable inference of knowledge and consent for purposes of personal responsibility. Likewise, Brooks alleged that Defendant Harbison, in her role as health services administrator, failed to implement adequate safeguards to ensure he was transferred to an appropriate medical facility for treatment, and discovery could reveal additional personal knowledge of Brooks' condition. These claims should not have been dismissed at this early stage.

It was not until a competent medical provider observed Brooks' condition that he was finally transferred to a hospital where he could receive necessary care. These supervisors caused and/or were responsible for, *inter alia,* failures at the facility to order testing which would have identified his serious medical condition, to follow up and appropriately monitor his deteriorating condition, to adequately train and supervise medical staff, and to provide guidance on transfer out of the facility for necessary care.

The court below erred in ruling that Count II of Plaintiff's Complaint failed to state a claim under *Bivens.*

## CONCLUSION

This Court should reverse the judgment of the district court which entered judgment against Plaintiff and in favor of Defendants, and remand the case for discovery and trial.

Respectfully submitted,

Dated: June 17, 2024

/s/ Janine L. Hoft
Janine L. Hoft
Nora P. Snyder
Jan Susler

PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070
(773) 235-6699 (fax)

*Attorneys for Plaintiff-Appellant Kevin Brooks*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Circuit Rule 32 because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief is less than 30 pages. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared using Microsoft Word (2010) in a proportionally-spaced typeface: 12-point Book Antiqua font.

Dated: June 17, 2024

/s/ Nora P. Snyder
Janine L. Hoft
Nora P. Snyder
Jan Susler

PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070
(773) 235-6699 (fax)

*Attorneys for Plaintiff-Appellant Kevin Brooks*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff-Appellant hereby certifies pursuant to Fed. R. App. P. 25(d) that on June 17, 2024, 2021, the Appellants' Opening Brief and Appendix was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. The undersigned counsel further certifies that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 17, 2024

/s/ Nora P. Snyder
Janine L. Hoft
Nora P. Snyder
Jan Susler

PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070
(773) 235-6699 (fax)

*Attorneys for Plaintiff-Appellant Kevin Brooks*

## APPENDIX

I certify that all materials required by Circuit Rule 30(a) and (b) are included in the Appendix.

s/Nora P. Snyder
Janine L. Hoft
Nora P. Snyder
Jan Susler

PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
(773) 235-0070
(773) 235-6699 (fax)

*Attorneys for Plaintiff-Appellant Kevin Brooks*

# APPENDIX TABLE OF CONTENTS

**Pages**

1       Decision on Motion to Dismiss (Dkt. 26)

16      Judgment (Dkt. 27)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN BROOKS,

    Plaintiff,

    v.

JOSH RICHARDSON, *et al.*

    Defendants.

No. 22-cv-6738
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Brooks (Brooks), while a prisoner at SCP Marion, a minimum-security work camp, experienced sharp abdominal pain over the course of two weeks, resulting in an emergency surgery for acute appendicitis. R.[1] 1, Compl. Brooks filed this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971) against Family Nurse Practitioner Josh Richardson (FNP-C Richardson), Nurse Bryant McGee (Nurse McGee), Physician's Assistant (PA) Leslee Brooks (PA Brooks), Health Services Administrator Dr. Elizabeth Harbison (Dr. Harbison), and Camp Administrator Melissa Schreiber (Schreiber) (collectively, Defendants), for failing to provide him with adequate medical care in violation of the Eighth Amendment. *Id.* Defendants move to dismiss Brooks' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 16, Mot. Dismiss. For the reasons that follow, Defendants' motion to dismiss the Complaint is granted.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background[2]

In December 2020, Brooks was a federal prisoner at SCP Marion, a minimum-security satellite work camp at the United States Penitentiary Marion in Marion, Illinois. Compl. ¶ 7. On December 26, 2020, Brooks began experiencing sharp abdominal pain. *Id.* ¶ 8. Two days later Brooks sought medical care from Nurse McGee for his pain, who gave him Tylenol but did not conduct a physical examination. *Id.* ¶ 11. Due to his persistent pain, on January 5, 2021, Brooks was seen by FNP-C Richardson, who listened to Brooks' abdomen and recorded hearing hypo-active bowel sounds. *Id.* ¶ 14. Richardson did not request any diagnostic tests, lab tests, nor consult with a physician. *Id.* ¶ 16. Richardson concluded that Brooks was suffering from constipation and provided over-the-counter laxatives. *Id.* ¶ 18. Brooks took the first dose of the laxative in Richardson's presence, after which Brooks vomited a gray and green substance. *Id.* ¶ 19. Richardson instructed Brooks to return the following day if his symptoms did not improve. *Id.*

Brooks' pain continued to worsen, to the point that he was no longer able to walk under his own power, prompting other inmates to help transport him to the sick call on a gurney. Compl. ¶¶ 20–21. There, Nurse McGee and FNP-C Richardson examined Brooks, determined he had COVID-19, provided him with Tylenol, and sent him away. *Id.* ¶ 22. Neither Nurse McGee nor FNP-C Richardson performed any tests, ordered any lab tests, or referred Brooks to a physician. *Id.* Afterward, Brooks laid in bed for days unable to perform his normal activities or work assignments. *Id.*

---

[2]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in favor of Brooks. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

¶ 24. Camp Administrator Schreiber observed Brooks lying in bed in pain and reassured him that he would receive medical attention. *Id.* ¶ 25. On January 9, 2021, Nurse McGee examined Brooks, who described his pain level as a 10 out of 10 and documented his temperature as 100.7 degrees Fahrenheit. *Id.* ¶ 28. Nurse McGee notified PA Brooks, who then ordered a COVID-19 swab and prescribed Brooks Tylenol. *Id.* ¶ 30. PA Brooks did not examine Brooks, nor did she order any lab tests or refer him to a physician. *Id.* ¶ 32. Nurse McGee then instructed Brooks to drink fluids, avoid food, and return in the morning for reevaluation. *Id.* ¶ 36. The next day, Brooks was reexamined by Nurse Hughes who recommended Brooks be immediately transferred to a hospital due to his condition. *Id.* ¶¶ 41–42.

At the hospital, the doctor's initial examination of Brooks revealed severe distension and abdominal tenderness. Compl. ¶ 44. Brooks was diagnosed with acute appendicitis with generalized peritonitis, a perforated viscus, and severe sepsis—all life-threatening conditions. *Id.* ¶ 45. Brooks underwent an appendectomy, which confirmed that his appendix had ruptured. *Id.* ¶ 47. Post-surgery, Brooks remained in the hospital for two weeks, spending one week in critical condition in the intensive care unit (ICU), intubated and sedated. *Id.* ¶ 48. Brooks underwent a second surgery to wash out the infection and partially close his abdomen. *Id.* ¶ 50. Brooks developed diastasis recti, a condition in which the large abdominal muscles separate, causing a permanently protruding stomach. *Id.* ¶ 52.

Brooks subsequently filed this action, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 408 U.S. 388 (1971), in which the Supreme

Court recognized an implied damages remedy against federal officers for certain constitutional violations. *Id*. Brooks alleges that FNP-C Richardson, Nurse McGee, PA Brooks, Dr. Harbison, and Schreiber failed to provide him with adequate medical care in violation of the Eighth Amendment (Count I) and that Dr. Harbison and Schreiber failed to establish or implement proper policies and procedures to ensure Brooks' adequate medical care in violation of the Eighth Amendment (Count II). Compl. Brooks seeks monetary damages for the constitutional violations. *Id*. ¶ 58.

Defendants move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a cause of action. Mot. Dismiss. The fully briefed motion is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants move to dismiss Brooks' *Bivens* claim arguing that Brooks' claims constitute a new *Bivens* context, and Congress, not the courts, is the proper entity to create a new cause of action in this circumstance. R. 17, Memo. Dismiss at 2.

To properly contextualize the nature of a *Bivens* claim, a brief overview of the Supreme Court's jurisprudence on the topic is in order. In *Bivens*, the Supreme Court recognized for the first time that an implied right of action for an individual whose Fourth Amendment right of freedom from unreasonable search and seizure was violated by the Federal Bureau of Narcotics. 403 U.S. at 390. There, federal agents entered Bivens' home and arrested him without a warrant. *Id*. at 389. The agents conducted the search in front of Bivens' family and threatened to arrest his wife and children. *Id*. The Court held that Bivens could sue for damages for the Fourth Amendment violation despite the lack of any federal statute authorizing such a suit. *Id*. at 397. The Supreme Court subsequently extended *Bivens* in "two additional contexts: a claim against a member of Congress under the Fifth Amendment for workplace discrimination, *Davis v. Passman*, 442 U.S. 228 (1979), and a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care, *Carlson v. Green*, 446 U.S. 14 (1980)." *Snowden v. Henning,* 72 F. 4th 237, 238–39 (7th Cir. 2023).

Over the years, however, *Bivens* claims have come to be viewed skeptically by the Supreme Court. *Bivens* was decided during what the Supreme Court has described as an "*ancien regime* [during which] the Court assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Ziglar v. Abbasi*, 582 U.S. 120, 131–32 (2017) (cleaned up).[3] In fact, the Court recently stated that if it were "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert v. Boule*, 596 U.S. 482, 502 (2022). This shift is premised on the principle that "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 582 U.S. at 135–36 (cleaned up). Today, "a cause of action under *Bivens* is a disfavored judicial activity" for which the "watchword is caution." *Egbert*, 596 U.S. at 491 (cleaned up).

To determine whether a *Bivens* remedy is available, courts must engage in a two-step inquiry. *Egbert*, 596 U.S. at 492. First, a court asks if the claim "presents a new *Bivens* context," meaning that the case is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (cleaned up). A context may be new when a new category of defendants is involved. *Snowden*, 72 F. 4th at 242. "If the context is not new, then the claim may proceed." *Id.* at 239. A non-exhaustive list of meaningful differences include:

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations,* 18 Journal of Appellate Practice and Process 143 (2017).

the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. 120 at 139–40.

If the context is new, the court must then determine if it is appropriate to imply a new private right of action to that claim. *Snowden,* 72 F. 4th at 239. In *Abbasi*, the Supreme Court reiterated that a *Bivens* remedy "will not be available if there are 'special factors' counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 582 U.S. at 136 (cleaned up). The "special factors" inquiry, explained the Court, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case, no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (cleaned up). Among those factors that courts may consider is whether alternative remedies exist for addressing the constitutional violations raised by the claims of a particular case. That is, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 582 U.S. at 137. "If there is even a single reason

to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (cleaned up).

Recently, the two-step process for evaluating requests to imply new constitutional causes of action has been called into question. *Sargeant v. Barfield*, 87 F.4th 358, 364 (7th Cir. 2023). In *Egbert*, the Supreme Court explained that, "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. "This is because the final two step-one considerations—the risk of disrupting other branches and the presence of special factors that prior cases did not consider—are similar to the second step." *Sargeant*, 87 F.4th at 364.

It is within this framework that the Court analyzes whether Brooks may assert a *Bivens* claims under the Eighth Amendment. The Court first addresses Count I as to all Defendants, then addresses Count II regarding Defendants Dr. Harbison and Schreiber.

## I.     Count I – *Bivens* Claim for Inadequate Medical Care

The Court's first task is to figure out whether Brooks is attempting to apply *Bivens* in a new context in Count I. In other words, whether Brooks' claim is "meaningfully different" from one of the *Bivens* trilogy of cases. If the claim does not arise in a new *Bivens* context, then the analysis ends here, and the claim can proceed. If the claim arises in a new *Bivens* context, then the analysis moves to the second step of the inquiry: whether there are special factors that counsel hesitation against

implying the remedy. Brooks alleges that Defendants acted with deliberate indifference of his serious abdominal pain resulting in an emergency appendectomy, in violation of the Eighth Amendment. Compl. ¶¶ 56–57.

Defendants contend that Brooks cannot maintain his claim in Count I because it arises in a new *Bivens* context, and as such, Congress, not the courts, is the proper entity to create a cause of action under these circumstances. Memo. Dismiss at 2. Defendants maintain that Congress has already created multiple remedial structures to address the kinds of injuries alleged by Brooks, namely the Bureau of Prisons' (BOP) administrative remedy program and the Federal Tort Claims Act (FTCA). *Id.* at 4. The BOP's administrative remedy program, submit Defendants, allows an inmate to file grievances "relating to any aspect of his/her own confinement." *Id.* (citing 28 C.F.R. §542.10). True, concede Defendants, the BOP's administrative remedy program does not provide a damages remedy. No matter because Brooks has a damages remedy available in the form of the FTCA. *Id.* at 5. Between the BOP's administrative remedy program and the FTCA, inmates in Brooks' situation have multiple alternative processes to protect their interest in obtaining adequate medical care. *Id.* at 6.

Defendants further assert that Brooks cannot compare his claims to *Carlson v. Green*, 446 U.S. 14 (1980), where the Supreme Court recognized a claim against federal prison officials under the Eighth Amendment for failure to provide adequate medical care. Memo. Dismiss at 8. In short, Defendants argue that there are factual distinctions as well as multiple special factors, particularly the presence of

alternative remedial structures such as the BOP administrative remedy process and the FTCA, that distinguish Brooks' claims from *Carlson*. *Id*.

In *Carlson*, prison officials allegedly knowing of the seriousness of an inmate's chronic asthma, kept the inmate in an inadequate facility against doctors' advice, failed to give him competent medical care for about eight hours after his first asthma attack, administered contra-indicated drugs, attempted to use an inoperative respirator, and delayed his transfer to an outside hospital. 446 U.S. at 16 n.1. The inmate allegedly died as a result of these acts and omissions. *Id*. The inmate's estate brought suit, alleging that the prison officials violated the decedent's Eighth Amendment rights by giving inadequate medical care. *Id*. The Supreme Court recognized a *Bivens* cause of action under the circumstances of that case. *Id*. at 25.

As previewed by Defendants, Brooks maintains that his claims are analogous to *Carlson*, and therefore, do not arise in a new *Bivens* context. R. 19, Resp. at 2. Brooks asserts that the failure and delay in treating his severe abdominal pain and ruptured appendix is the same as the failure and delay in treating plaintiff's asthma attack in *Carlson*. Resp. at 4.

The Court agrees with Defendants that the differences present in Brooks' claim are meaningful enough to constitute a new *Bivens* context. First, as Defendants point out, Brooks alleges an ongoing failure to treat his abdominal pain over the course of fourteen days resulting in ongoing injuries, while *Carlson* involved a lack of appropriate medical care during a single asthmatic episode lasting eight hours and resulting in death. R. 20, Reply at 2. Second, Brooks' claim is distinguishable from

10

*Carlson* because Brooks alleges two supervisors, Health Services Administrator, Dr. Harbison and Camp Administrator, Schreiber, failed to perform their administrative and supervisory roles, which *Carlson* did not allege. True, there are some high-level similarities between this case and *Carlson*, but there are meaningful differences which preclude an extension of *Bivens*.

Moreover, the presence of special factors, namely, the alternative remedial structures create a new *Bivens* context. As the Seventh Circuit acknowledged in *Sargeant* and as discussed above, the two-step analysis was somewhat condensed by the Supreme Court's decision in *Egbert*. 87 F.4th at 364. Defendants argue that the Court must consider "special factors" that counsel hesitation in step one, whereas Brooks argues that remains a consideration only if his claims arise in a "new context." Reply at 2; Resp. at 3. But as established by the Supreme Court in *Abbasi,* a difference that is meaningful enough to create a new context is the "presence of special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. 120 at 140. Since *Carlson*, the Supreme Court has viewed alternative remedy programs as a special factor which alone can foreclose a *Bivens* claim. *See Egbert,* 596 U.S. at 494 ("If there are alternative remedial structures in place, that alone, like any other special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.") (cleaned up). Accordingly, the availability of alternative remedy programs in this case is a special factor that creates a new *Bivens* context.

Brooks does not argue that alternative remedy programs are unavailable to him. And while Brooks cites numerous out-of-District cases in which a *Bivens* claim

has been allowed to proceed, *see, e.g.*, *Thomas v. Ahmed*, 2023 WL 2499597, at *5 (S.D. Ill. Mar. 14, 2023) (finding that plaintiff's claim of inadequate medical treatment for a knee injury over the course of three years presented the same context as *Carlson*); *Rodriguez v. Ahmed*, 2023 WL 361207, at *4 (S.D. Ill. Jan. 23, 2023) (holding that the plaintiff's claim of inadequate medical care of a scalp condition, hernia, back injury, diabetes, and elevated liver enzymes was not meaningfully different from *Carlson*); *Pitts v. Bagwell*, 2022 WL 1172159, at *5 (S.D. Ill. Apr. 20, 2022) (finding that the denial of an inhaler for seven months for plaintiff's chronic asthma was sufficient for a *Bivens* claim while claims of inadequate care for anxiety, hypertension, back pain, acid reflux and other ailments were insufficient), he does not offer any where a court acknowledged the existence of such alternative remedies and found a valid *Bivens* claim.

In addition, the Court agrees with Defendants, that the Count I *Bivens* claim cannot be brought against either Dr. Harbison or Schreiber. In order for a *Bivens* claim to proceed against Dr. Harbison and Schreiber, Brooks must allege the personal involvement of each Defendant. *See Abbasi*, 582 U.S. at 140–41. ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others."). Brooks does not allege that Dr. Harbison or Schreiber inadequately provided or failed to provide him with medical care. Brooks only mentions that Schreiber observed him lying in bed in pain while on a routine walk-through. Compl. ¶ 25. Further, Brooks makes no reference as to any interaction with Dr. Harbison nor does he allege how Dr. Harbison acted or failed to act in regard to his medical care.

Brooks cannot bring a claim against Dr. Harbison or Schreiber simply for their supervisory positions at the prison facility. *See Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) ("a defendant cannot be liable under *Bivens* on the basis of respondeat superior or supervisory liability") (cleaned up). Additionally, as stated above, *Abbasi* established that the rank of the officers involved is a meaningful difference that presents a new *Bivens* context. *Id.* at 140. Extending Brooks' claim to Dr. Harbison and Schreiber would broaden the application of *Bivens* to include a new category of defendants, which has been consistently refused by the courts. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (stating that "[s]ince *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants").

All in all, because Brooks' claims arise in a new context, and Congress has already established alternative remedies that Brooks may pursue to redress any alleged harm, the Court will not extend *Bivens* into this new context and his Count I *Bivens* claims fails.

## II.   Count II – *Bivens* Claims for Failing to Establish and Implement Appropriate Treatment Policies and Practices

The Court next addresses Brooks' Count II *Bivens* claims against Dr. Harbison and Schreiber. Brooks alleges that Dr. Harbison and Schreiber violated his Eighth Amendment rights by failing to establish and implement appropriate treatment protocols, policies, practices, and procedures regarding medical care at the SCP Marion prison facility. Compl. ¶¶ 59–60. Considering that a *Bivens* claim is not the appropriate method for challenging the prison's medical policies and procedures, the motion to dismiss as to Count II is granted.

13

Focusing on the first step of the inquiry, the Supreme Court has stated that "a *Bivens* action is not a 'proper vehicle for altering an entity's policy.'" *Abbasi*, 582 U.S. at 140 (2017) (quoting *Malesko*, 534 U.S. at 74). *Bivens* is concerned only with deterring the unconstitutional acts of individual federal officers, not with deterring the conduct of a policymaking entity. *See Malesko,* 534 U.S. at 71. Thus, Brooks' Count II claim is meaningfully different from the *Bivens* trilogy and arises under a new *Bivens* context.

Accordingly, the inquiry moves to the second step: whether there are special factors that counsel hesitation against implying the remedy. The "special factors" inquiry, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 582 U.S. at 136. There is reason to believe that Congress would be better positioned than the courts to weigh the costs and benefits regarding policy and procedure-making. *Abbasi*, 582 U.S. at 141 ("It is a significant step under separation-of-powers principles for a court to determine that it has the authority to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation."). This special factor alone forecloses the extension of *Bivens* into this context. For this reason, the motion to dismiss as to Count II is granted.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Counts I and II [16]. Civil case terminated.

Date:  3/31/2024

_____
United States District Judge
Franklin U. Valderrama

ILND 450 (Rev. 10/13) Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

KEVIN BROOKS,

    Plaintiff(s),

v.

JOSH RICHARDSON, *et al.*,

    Defendant(s).

Case No.  22-cv-6738
Judge Franklin U. Valderrama

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

        which ☐ includes    pre–judgment interest.
        ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☒    in favor of defendant(s) JOSH RICHARDSON, BRYANT MCGEE, LESLEE BROOKS, DR. ELIZABETH HARBISON, AND MELISSA SCHREIBER,
    and against plaintiff(s) KEVIN BROOKS,

Defendant(s) shall recover costs from plaintiff(s).

---

☐    other:

---

This action was *(check one)*:

☐ tried by a jury with Judge    presiding, and the jury has rendered a verdict.
☐ tried by Judge    without a jury and the above decision was reached.
☒ decided by Judge Franklin U. Valderrama on a motion.

Date:  3/31/2024

Thomas G. Bruton, Clerk of Court

Claire E. Newman, Deputy Clerk